UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JERMAINE LEON JONES,

        Petitioner,                      Case No. 1:19-cv-343

v.                                           Honorable Paul L. Maloney

MATT MACAULEY,

        Respondent.
_____/

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

I. <u>Factual allegations</u>

Petitioner Jermaine Leon Jones is incarcerated with the Michigan Department of Corrections at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. Following a jury trial in the Calhoun County Circuit Court, Petitioner was convicted of first-degree premeditated murder, Mich. Comp. Laws § 750.316. On July 7, 2016, the court sentenced Petitioner to life imprisonment.

On April 29, 2019, Petitioner filed his habeas corpus petition. Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner signed his application on April 29, 2019. (Pet., ECF No. 1, PageID.14.) The petition was received by the Court on May 2, 2019. The petition raises three grounds for relief, as follows:

I. Insufficient evidence

II. Impartial Jury

III. Ineffective assistance [of] counsel

(Pet., ECF No. 1, PageID.5, 7, 8.)

The following facts are taken from the introductory section of the Michigan Court of Appeals' opinion denying Petitioner's direct appeal:

> Defendant was convicted for the August 9, 2015, shooting of Breon Williams in the Park Hill neighborhood of Battle Creek. On August 8, 2015, defendant went with Jlin Cannon, Dezmen Jones, and Kyle Epps to a local nightclub, where he had a short, unfriendly interaction with Williams. The atmosphere made Epps uncomfortable, and Epps left. Defendant later left the nightclub with Dezmen and Cannon and drove his Chevy Tahoe to Epps's apartment, where he asked Epps if he could borrow Epps's tan Bonneville so that the men could search for Williams unrecognized. Defendant told Epps that he had a gun[1] and stated that "it would be one of theirs before it's one of his family members." Epps allowed defendant to borrow his car, and Cannon drove the four men to the Park Hill neighborhood. Initially, the search for Williams was

2

unsuccessful, so Cannon parked the car and the men sat in the car for 10 to 15 minutes. During this time, defendant said, "If we can't find Breon, we find somebody that's close to him." When the men resumed their search, Cannon spotted Williams near the sidewalk, leaning over a car and speaking through the passenger-side window. Cannon pulled up to Williams's location, and Dezmen fired five or six shots at Williams from the rear passenger side of Epps's car. Williams died from a single gunshot wound to the chest.

[1] Epps testified that defendant told him that he "had a gun" and later stated that "he had a gun in the car . . . ."

*People v. Jones*, No. 333919, 2017 WL 4699751 (Oct. 19, 2017).

On appeal to the Michigan Court of Appeals, Petitioner raised the same three claims as he presents in his habeas petition. In its unpublished opinion issued on October 19, 2017, the court of appeals denied all appellate grounds and affirmed the conviction. Petitioner sought leave to appeal to the Michigan Supreme Court, again raising the claims presented on habeas review. The supreme court denied leave to appeal on May 1, 2018.

## II.     AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. \_\_, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v Rodgers*, 569 U.S. 58, 64 (2013); *Parker v Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in

their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

III.    Ground I: Sufficiency of the Evidence

In his first ground for relief, Petitioner argues that the evidence was insufficient to convict him of first-degree murder. A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable

5

inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

In addressing Petitioner's claim, the court of appeals held, as follows:

Defendant argues that his conviction was not supported by sufficient evidence. We review de novo claims of insufficient evidence, viewing the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011).

Defendant was convicted of first-degree murder under an aiding-and-abetting theory. MCL 767.39 establishes criminal liability for individuals who assist or encourage a principal in the commission of a crime. *People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006). The Michigan Supreme Court has identified three elements necessary for conviction under an aiding-and-abetting theory:

(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that the defendant gave aid and encouragement. [*Id.* (alteration marks, quotation marks, and citation omitted).]

Defendant argues that the prosecution failed to present evidence sufficient for the jury to find the second and third elements of aiding and abetting. Defendant does not dispute that Dezmen shot and killed Williams.

Regarding the second element, aiding and abetting includes any type of assistance given to the perpetrator of a crime by words or deeds that are intended to encourage, support, or incite the commission of the crime. *People v Palmer*, 392

6

Mich 370, 378; 220 NW2d 393 (1974). The precise amount of aid, advice, or encouragement is not material if it had the effect of inducing the crime. *Id.*

Epps testified that defendant called him after leaving the club and asked to come to his apartment and speak with him. Cannon testified that defendant then drove to Epps's apartment to switch vehicles before the men proceeded to the Park Hill neighborhood. On the way to Epps's apartment, defendant recited apparent threats Williams made at the club. Epps testified that defendant, upon arriving at his apartment, asked to borrow his car so that they could search for Williams unrecognized. Defendant informed Epps that he had a gun and told Epps that "it would be one of theirs before it's one of his family members." Epps also testified that, on the way to the Park Hill neighborhood, defendant aided the search for Williams by giving directions to the driver. Epps testified that defendant said, "If we can't find Breon we'll find somebody that's close to him."

Defendant argues that the evidence was insufficient to prove that he did anything more than simply be "present when the shots were fired." "Mere presence," even with knowledge that an offense will be committed, is insufficient to establish that a person aided and abetted a crime. *People v Wilson*, 196 Mich App 604, 614; 493 NW2d 471 (1992). However, when viewed in the light most favorable to the prosecution, the testimony of Epps and Cannon identified acts and statements by defendant that a rational trier of fact could have found beyond a reasonable doubt assisted or encouraged Dezmen in the commission of the crime. See *Palmer*, 392 Mich at 378.

Regarding the third element, an aider and abettor's mental state may be "inferred from all the facts and circumstances" surrounding an event. *People v Carines*, 460 Mich 750, 758; 597 NW2d 130 (1999) (quotation marks and citations omitted). Factors that may be considered include the defendant's close association with the principal, his act of fleeing the crime scene with the principal, and his participation in planning and committing the crime. See *id.*

Epps testified that Dezmen was defendant's nephew. On August 8, 2015, the four men spent the day and evening together; they were together at Epps's baby shower, The Arbors apartment complex, and The Music Factory. At The Music Factory, defendant and Williams had what Epps described as a troublesome interaction. Cannon testified that, on the way to Epps's apartment, defendant recited threats that Williams had made against Dezmen that night. Epps testified that defendant told him that "it would be one of theirs before it's one of his family members" and that he had a gun. Defendant expressed that he needed to borrow Epps's car because his was too recognizable. Although defendant did not explicitly tell Epps that they were going to kill Williams, Epps inferred "that's what they wanted to use my car for." Cannon testified that he "didn't know" that there was a gun in the car when the men went looking for Williams, but he "figured [there] probably was[.]" Defendant stayed with the men in Epps's Bonneville through the commission of the offense, and then fled with them after Williams's murder. Viewing this evidence in the light most favorable to the prosecution, a rational trier

7

> of fact could have found beyond a reasonable doubt that defendant either intended the murder of Williams or knew of Dezmen's intent at the time he provided aid and encouragement.

*Jones*, 2017 WL 4699751, at *1-2. Although the court of appeals recited only state law, it squarely applied the *Jackson* standard, using nearly identical language. As instructed by *Jackson*, the court of appeals identified the elements of first-degree murder under an aiding-and-abetting theory. It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). As a result, this Court is bound by the elements as determined by the Michigan Court of Appeals.

Moreover, the court of appeals' determination includes numerous findings of fact from the trial record. As earlier discussed, state-court factual findings, even those of appellate courts, are entitled to a presumption of correctness, and a petitioner has the burden of overcoming that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Sumner*, 449 U.S. at 546; *Smith*, 888 F.2d at 407 n.4. Petitioner does not dispute any fact recited by the Michigan Court of Appeals, much less offer clear and convincing evidence to overcome the presumption of correctness. The factual findings of the court of appeals therefore are binding on this court.

This Court, therefore, need only consider whether, applying the double deference owed to the state court's determination on a sufficiency claim, the court of appeals reasonably found that sufficient facts supported each of the elements identified by the court of appeals.

As the court of appeals recognized, the first element of the offense was undisputed. Petitioner did not contest the testimony that Dezman shot and killed Williams, thereby fulfilling the requirement that "the crime charged was committed by the defendant or some other person." *Robinson*, 715 N.W.2d at 47.

The second element, whether Petitioner performed acts or gave encouragement that assisted in the commission of the crime, was amply supported by the testimony of both Epps and Cannon. Cannon testified that Petitioner spoke of the threats made by the victim during their earlier altercation and that Petitioner drove to Epp's apartment to switch vehicles before going to look for the victim. Epps testified that Petitioner asked to borrow Epp's car so that the victim would not recognize Petitioner's car. Petitioner told Epps that he had a gun, and he made a statement suggesting that he would use it. Petitioner gave directions in the search for the victim. And Petitioner suggested that, if they could not find the victim, they would find someone who was close to the victim. These facts amply support the jury's and the court of appeals' decisions that Petitioner took actions that assisted or encouraged Dezman in the commission of the murder. Indeed, the facts strongly support a conclusion that Petitioner took an active role in the tracking down and shooting of the victim.

Finally, those same facts support the third element of the offense—that Petitioner either intended the murder or aided and abetted with knowledge that Dezman intended the homicide. The testimony concerning Petitioner's actions and statements, taken in the light most favorable to the prosecution, support a reasonable jury's inference that Petitioner intended Dezman to shoot the victim or aided and abetted Dezman with knowledge that Dezman intended to murder the victim.

For these reasons, the evidence was sufficient to support every element of the offense of first-degree murder on a theory of aiding and abetting. The court of appeals' denial of Petitioner's first habeas ground therefore constituted an entirely reasonable application of clearly established federal law.

### IV.    Grounds II:  Impartial Jury

In Ground II of his habeas petition, Petitioner contends that he was denied his right to an impartial jury drawn from a fair cross section of the community.  Because Petitioner did not object to the venire in the trial court, the Michigan Court of Appeals held that he had failed to preserve the issue for appeal.  It therefore reviewed the claim only for plain error:

> In a Standard 4 brief,[2] defendant argues that he was denied his constitutional right to an impartial jury drawn from a fair cross section of the community.  Because defendant did not preserve this issue by raising it before the jury was sworn and empaneled, *People v Dixon*, 217 Mich App 400, 404; 552 NW2d 663 (1996), we review the issue for plain error affecting the substantial rights of defendant, *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).
>
> "The Sixth Amendment of the United States Constitution guarantees a defendant the right to be tried by an impartial jury drawn from a fair cross section of the community." *People v Bryant*, 491 Mich 575, 595; 822 NW2d 124 (2012). To establish a prima facie violation of the fair-cross-section requirement, the defendant must show
>
>> (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process. [*Id.* at 597 (quotation marks and citations omitted).]
>
> This Court's review is limited to the lower-court record.  See *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002).  Therefore, we do not consider the affidavit that defendant presented with his Standard 4 brief. There is nothing in the record to indicate the racial or ethnic makeup of the jury venire.  Accordingly, the record does not support defendant's claim that there were no African-Americans or other minorities on the jury venire. There is no plain violation of defendant's right to an impartial jury drawn from a fair cross section of the community.  *Carines*, 460 Mich at 763.
>
> [2] See Michigan Supreme Court Administrative Order 2004-6, Standard 4.

*Jones*, 2017 WL 4699751, at *3.

"If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention – whether in trial, appellate, or habeas proceedings, as state law may

require – procedural default will bar federal review." *Magwood v. Patterson*, 561 U.S. 320, 340 (2010). Nevertheless, the U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)). *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Where, as here, the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default. *See Hudson*, 351 F.3d at 215-16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

In *Taylor v. Louisiana*, 419 U.S. 522 (1975), the Supreme Court held that "the Sixth Amendment affords the defendant in a criminal trial the opportunity to have the jury drawn from *venires* representative of the community . . . ." *Id.* at 537. In order to establish a prima facie violation of the fair-cross-section requirement, a defendant must demonstrate three elements: (1) that the group alleged to be excluded is a "distinctive group" in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process. *Duren v. Missouri*, 439 U.S. 357, 364 (1979); *see also Berghuis v. Smith*, 559 U.S. 314, 319 (2010). When potential jurors

are systematically excluded from the jury pool on the basis of race, structural error occurs. *Vasquez v. Hillery*, 474 U.S. 254, 263-64 (1986). Structural error is not subject to harmless-error review. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148-49 (2006) (citing *Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991)).

In considering the fair-cross-section claim on plain-error review, the Michigan Court of Appeals applied *People v. Bryant*, 822 N.W.2d 124 (Mich. 2012). The *Bryant* court itself relied upon *Taylor*, 419 U.S. 522, and *Duren*, 439 U.S. 357, and it recited the standards of review taken from those cases. As a consequence, the Michigan Court of Appeals clearly applied the correct constitutional standards.

The court of appeals held that nothing in the record indicated the racial or ethnic makeup of the jury venire. As a consequence, it held that Petitioner had failed to demonstrate the factual predicate for his claim that there were no African-Americans or other minorities in the jury venire. Effectively, the court of appeals denied Petitioner's claim on the ground that he had failed to demonstrate the second prong of the *Duren* test—that the representation of minorities in the venire was not fair and reasonable in relation to the number of such persons in the community. *Duren*, 439 U.S. at 364.

The court of appeals declined to consider the affidavit Petitioner attached to his Standard 4 brief on appeal, contending that it was not part of the trial record. Because the Court is skipping the procedural default issue, however, the Court will accept the affidavit that Petitioner attached to his Standard 4 brief.[1] However, even accepting that affidavit, which avers that

---

[1] Under the Advisory Committee Notes to Rule 4 of the Rules Governing Section 2254 Cases, a federal court conducting initial review of a habeas petition may consider "any exhibits attached to the petition, including, but not limited to, transcripts, sentencing records, and copies of state court opinions. The judge may order any of these items for his consideration if they are not yet included with the petition." Rule 4 Advisory Committee Notes. Moreover, a court is permitted to "take judicial notice of facts contained in state court documents pertaining to [a petitioner]'s prior conviction so long as those facts can be accurately and readily determined." *United States v. Davy*, 713 F. App'x 439, 444 (6th Cir. 2017) (citing *United States v. Ferguson*, 681 F.3d 826, 834-35 (6th Cir. 2012)). For both reasons, the

Petitioner's venire contained no African-Americans or other minorities and that Petitioner complained to his attorney about that fact, Petitioner utterly fails to meet the third prong of the fair-cross-section claim—to demonstrate that any underrepresentation was the result of a systematic exclusion of the group in the jury-selection process. To make such a showing, Petitioner must demonstrate that a particular jury-selection process utilized by the trial court caused a systematic underrepresentation. *Duren*, 439 U.S. at 366. Such a systematic exclusion is not shown simply by the fact that Petitioner's jury venire happened not to have African-Americans and other minorities. *See United States v. Suggs*, 531 F. App'x 609, 619 (6th Cir. 2013) ("It is incumbent upon the defendant to show more than that a particular jury panel was unrepresentative.") (citing *United States v. Odeneal*, 517 F.3d 406, 412 (6th Cir. 2008)).

In support of his claim of systemic underrepresentation, Petitioner has never identified a particular failure in the jury-selection process utilized by Calhoun County. Instead, in his Standard 4 brief, Petitioner made a wholly conclusory claim that "disproportionate jury venires ha[ve] been an inherent problem in Calhoun County." (Standard 4 Brief, p. 6.) The Supreme Court has never held that such a conclusory allegation, standing alone, meets a petitioner's obligation to identify the particular problem with the jury-selection process that caused a systemic error. *Cf. Duren*, 439 U.S. at 366 (identifying two aspects of the jury-selection process that resulted in a gross discrepancy in the percentage of women in jury venires); *Berghuis*, 559 U.S. at 332 (holding that, despite the fact that the petitioner had identified a number of factors in the process that "might" contribute to underrepresentation of racial minorities—including "siphoning"

---

Court relies on the public records of the Michigan Court of Appeals in conducting its review under Rule 4. The Court has reviewed Petitioner's Standard 4 Brief on Appeal, together with its attachments, docketed as entry #29 on the Michigan Court of Appeals electronic docket sheet. *See* Mich. Ct. App. Docket Sheet, Case No. 333919, https://courts.michigan.gov/opinions_orders/case_search/pages/default.aspx?SearchType=1&CaseNumber=333919&CourtType_CaseNumber=2.

jurors from the pool for district court juries before they were used on circuit-court juries and granting routine exemptions to persons of 65, teachers, and government workers—fell short of the kind of proof of a link between those factors and any resulting racial disparity).

Because he fails to meet the third prong of the *Duren* test, Petitioner fails to show a violation of his right to an impartial jury. Accordingly, the Michigan Court of Appeals' denial of Petitioner's claim was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

V. Count III: Ineffective Assistance of Counsel

In his third ground for habeas relief, Petitioner contends that his trial attorney rendered ineffective assistance of counsel by failing to object to the composition of the jury venire. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court

14

determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

Applying the *Strickland* standard, the Michigan Court of Appeals rejected Petitioner's claim:

> To establish a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). A defendant must prove the factual predicate for his claim of ineffective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). The factual predicate for defendant's claim is the exclusion of African-Americans and other minorities from the jury venire. But, as already stated, there is no evidence in the record to support the claim. Further, defense counsel cannot be faulted for failing to raise an objection or motion that would have been futile. *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998). Because defendant has not demonstrated the factual predicate of his claim, he has not shown that defense counsel's objection to the jury venire would not have been futile.

*Jones*, 2017 WL 4699751, at *3.

The court of appeals' determination was patently reasonable. As this Court previously held, Petitioner's fair-cross-section claim is meritless. Counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000).

Moreover, Petitioner attaches a letter from trial counsel indicating that he had considered whether to raise the issue of jury composition, but he concluded that the issue did not appear to be viable. Counsel's decision, therefore, was one of trial strategy, which is presumed to have been reasonable. *Strickland*, 466 U.S. at 489. Given the absence of any evidence of systematic underrepresentation, Petitioner fails to overcome that presumption.

For these reasons, Petitioner fails to overcome the double deference owed to the court of appeals' denial of Petitioner's claim of ineffective assistance of trial counsel.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so

lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10, 15 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490, 492 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

The Court will enter a judgment and order consistent with this opinion.


Dated: June 4, 2019               /s/ Paul L. Maloney
                                  Paul L. Maloney
                                  United States District Judge